SOLOMON, District Judge:
 

 Royal Bank of Canada (Royal Bank) appeals from a district court order confirming the joint reorganization plan of Westgate-California Corporation (Westgate) and its subsidiaries under Chapter X of the Bankruptcy Act, 11 U.S.C. § 501 et seq.
 
 [1]
 
 The district court held that Royal Bank has no standing to challenge the confirmation order because it is not a creditor of the bankruptcy estate and even if it were a creditor its objections are without merit.
 

 On May 17, 1971, West Coast Properties, Inc. (West Coast) issued the United States National Bank of San Diego (USNB) its promissory note for $1.2 million. USNB was controlled by C. Arnholt Smith, who also controlled West Coast’s parent, West-gate, a holding company. On the same day, USNB endorsed the note to Royal Bank and issued its irrevocable letter of credit to Royal Bank which advanced $1.2 million to USNB. The letter of credit authorized Royal Bank to draw on USNB for West Coast’s account up to $1.2 million. The letter contained a maturity date of May 17, 1974 and specified interest “at the rate of lVi% per annum over the Royal Bank of Canada’s six-month London Interbank Rate . . .. ” The promissory note neither stated an interest rate nor a maturity date but it provided for attorney’s fees if an action were filed.
 

 On September 28, 1971, USNB advanced $3.25 million to West Coast. West Coast issued USNB its promissory note for that amount. Simultaneously, the parties entered into an agreement which gave USNB a lien on a Boeing 737 aircraft owned by West Coast and provided that it covered all West Coast’s obligations to USNB “whether direct, indirect, or contingent whether or not otherwise secured and whether now existing or hereafter incurred.”
 

 
 *461
 
 On February 26, 1974, Westgate and its subsidiaries, including West Coast, filed a Chapter X proceeding under the Bankruptcy Act. On March 19, 1975, Royal Bank filed a proof of claim in the West Coast proceedings, asserting a security interest in the aircraft. The FDIC has since paid Royal Bank $1,755,065.56 (repayment of $1.2 million principal and $556,065.56 of interest). As of now, Royal Bank’s claim consists of (1) additional interest representing the difference between the letter of credit rate and the legal rate of 7% from the date of maturity until paid and (2) attorney’s fees as provided for in the promissory note.
 

 On June 20, 1979, the district court entered an order authorizing the trustees and Valley National Bank to implement a compromise agreement. The trustees agreed to transfer the aircraft to Valley National free and clear of all liens except that of Harris Trust and Savings Bank. In return, Valley National agreed to either pay or assume Harris Bank’s secured claim of approximately $1 million and to withdraw its own claim of $8.35 million, filed in the Chapter X proceeding, which was secured by shares of Air California.
 

 Notice of a hearing on this compromise had been mailed to Royal Bank at the address stated on its proof of claim. Royal Bank neither objected to the transfer nor appeared at the hearing. It contends that it never received the notice because it was sent to a former address and that the trustees knew the correct address because since 1977 they had mailed all communications to the correct address.
 

 On July 5, 1979, the trustees filed a “Joint Plan of Reorganization (First Modification)” (Plan). The court set a confirmation hearing for March 11, 1980. Royal Bank timely filed an objection to the confirmation insofar as the Plan proposed to classify Royal Bank’s claim as unsecured and to consolidate the assets of West Coast and Westgate. Royal Bank filed two memoran-da in support of its objection. At the confirmation hearing the court refused to recognize Royal Bank as a proper objecting party.
 

 Thereafter the court made “Findings of Fact and Conclusions of Law” and entered its order confirming the Plan. In its “Conclusions” pertaining to Royal Bank, the court stated that (1) Royal Bank is without standing to object to confirmation because it is not a creditor; and (2) Royal Bank’s objections are without merit and should be overruled and denied.
 

 The principal issue in this appeal is whether the district court correctly held that Royal Bank is not a creditor of the bankruptcy estate.
 

 Royal Bank asserts a security interest in the aircraft based on the September 28, 1971 security agreement between USNB and West Coast. Royal Bank was not a party to this agreement but it claims that it is entitled to the benefit of USNB’s lien because under the provisions of the security agreement Royal Bank was the ultimate obligee of West Coast’s debt to USNB. This argument depends on the validity of Royal Bank’s characterization of USNB as the guarantor of West Coast’s promissory note which Royal Bank now holds. Cal.Civ. Code § 2854.
 
 [2]
 

 Royal Bank’s argument is without merit. USNB did not guarantee any obligation of West Coast to Royal Bank. Royal Bank Senior Loan Officer Regan in his affidavit filed in support of Royal Bank’s claim with the FDIC stated:
 

 “In extending funds to USNB supported by notes of USNB customers and irrevocable letters of credit of USNB we considered ourselves as merely making loans to USNB to be used by USNB as it deemed appropriate.”
 

 The $1.2 million loan evidenced by the letter of credit was a loan directly from Royal Bank to USNB, not a loan from
 
 *462
 
 Royal Bank to West Coast guaranteed by USNB. Royal Bank held USNB’s irrevocable letter of credit to secure that loan. USNB was a primary obligor, not a guarantor and therefore California Civil Code Section 2854 is inapplicable.
 

 Even if Royal Bank had a valid security interest in the aircraft, it would still not be a creditor of the bankruptcy estate because the aircraft no longer belongs to the estate. Royal Bank disputes this conclusion. It first contends that the transfer may not be valid because the trustees failed to notify it of the proposed transfer. Bankruptcy Rule 10-209 provides that:
 

 “All notices to which a creditor, stockholder, or indenture trustee is entitled under these Rules shall be addressed to such person as he or his authorized agent may direct in a request filed with the court; otherwise, to his address shown in the lists, or, if a different address is stated in a proof of claim duly filed, then at the address so stated.”
 

 Here, notice of the proposed compromise agreement, which included the transfer, was mailed to Royal Bank at the address stated in its proof of claim. This was proper because Royal Bank had not notified the court of a change of address.
 

 Second, Royal Bank contends that its security interest in the aircraft attached to the proceeds of the transfer. This contention is also without merit. Royal Bank argues that Valley National’s release of its lien on shares of Air California was the proceeds of the transfer. No proceeds to which a lien may attach can result from the release of a disputed claim.
 

 The district court’s order authorizing the trustees and Valley National to implement their agreement did not adjudicate the status of any liens on the aircraft. In fact, the court in its “Conclusions” provided that “nothing herein is intended to prejudice any claims which Royal Bank may have against any person or party other than these Chapter X estates.”
 

 Nevertheless, Royal Bank contends that the district court erred in not holding an evidentiary hearing on the validity of its lien claim on the aircraft and on its objections to the Plan. The record does not indicate that counsel made an offer of proof or requested an opportunity to prove the validity of Royal Bank’s claim. Neither did counsel make a showing in opposition to the Plan. Royal Bank may not now complain that the district court denied it the opportunity to present evidence which it never offered the court.
 
 See, Fortunato v. Ford Motor Co.,
 
 464 F.2d 962, 967 (2nd Cir.),
 
 cert. denied,
 
 409 U.S. 1038, 93 S.Ct. 517, 34 L.Ed.2d 487 (1972).
 

 Even if the failure to hold an evi-dentiary hearing on Royal Bank’s objections was error, the error was harmless. At the confirmation hearing the district court had before it all of the evidence that was relevant to a determination of Royal Bank’s claim. It had Royal Bank’s proof of claim, the documents underlying the claim, and the memoranda in support of its objections. It also had the trustee’s memorandum in response to Royal Bank’s objection and Harris Trust and Savings Bank’s response to the objection. It was undisputed that West Coast no longer owned the aircraft on which Royal Bank claimed a lien. Based on these documents, a court could rule that Royal Bank’s claimed collateral was no longer part of the bankruptcy estate and that Royal Bank never had a security interest in the aircraft. The district court so held and we agree.
 

 Royal Bank has raised other issues but it is unnecessary to consider any of them because we hold that Royal Bank is not a creditor of the bankruptcy estate. We have, however, examined each of them and find that none has any merit.
 

 AFFIRMED.
 

 [1]
 

 . The new Bankruptcy Code, 11 U.S.C. § 101
 
 et seq.,
 
 became effective on October 1, 1979. Because this case was filed prior to that date, it is governed by the Bankruptcy Act,
 
 codified in
 
 former 11 U.S.C. § 1 et
 
 seq.
 

 [2]
 

 . Cal.Civ.Code Section 2854 provides: “A creditor is entitled to the benefit of everything which a surety has received from the debtor by way of security for the performance of the obligation, and may, upon the maturity of the obligation, compel the application of such security to its satisfaction.”